IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| AFFINITY LIVING GROUP, LLC, | ) | |
|---|---|---|
| and CHARLES E. TREFZGER, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:18-CV-35 |
| | ) | |
| STARSTONE SPECIALTY | ) | |
| INSURANCE COMPANY, and | ) | |
| HOMELAND INSURANCE | ) | |
| COMPANY OF NEW YORK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs Affinity Living Group and Charles Trefzger are defendants in a *qui tam* lawsuit pending in the Eastern District of North Carolina. They filed this case seeking to compel their professional liability insurer, defendant Homeland Insurance, to defend and indemnify Affinity in the *qui tam* suit. Because Affinity's policy with Homeland unambiguously excludes coverage for the underlying *qui tam* suit, the Court will grant Homeland's motion for judgment on the pleadings.

I. **The Undisputed Facts**

   a. **The Gugenheim Suit**

In the summer of 2016, Stephen Gugenheim filed a *qui tam* suit against a number of North Carolina adult care homes, naming Charles E. Trefzger as "owner and Member-manager" and Affinity as one of the "managing entities." Doc. 32-1 at 5, p. 8 ¶ 6, p. 25

¶ 67.[1]  Mr. Gugenheim filed his complaint on behalf of the United States and the State of North Carolina pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), and a similar North Carolina statute, N.C. Gen. Stat. § 1-607(a).  Doc. 32-1 at p. 6 ¶ 1.  Mr. Gugenheim alleges that the defendants were alter egos of each other, *id.* at p. 28 ¶ 80, and that they acted in concert to submit false claims for Medicaid reimbursements for personal care services that were not actually provided to residents of their adult care homes.  *See, e.g.*, *id.* at p. 7 ¶ 2.  He further asserts that the defendants acted with knowledge or deliberate ignorance of the falsity of these Medicaid claims.  *Id.* at p. 7 ¶ 2, pp. 47–49 ¶¶ 164–172.  The suit seeks treble damages and penalties for each false statement.  *Id.* at p. 8 ¶ 11.

### b. The Insurance Policies and Coverage Denials

Affinity carries separate insurance policies through Homeland Insurance and StarStone Specialty Insurance Company, both of which provide indemnification and defense against certain claims arising out of services rendered at Affinity's adult care facilities.  Doc. 22-1 (Affinity's policy with Homeland); Doc. 19-1 (Affinity's policy with StarStone).  Affinity's policy with Homeland is the first line of defense, Doc. 22-1 at 11, whereas the StarStone policy is an "umbrella" plan that applies only if the Homeland policy is exhausted on, or is inapplicable to, a covered claim.  *See* Doc. 19-1 at 15, 25.

---

[1] All citations in this opinion to documents filed with the Court refer to the Middle District docket number and pagination assigned by the CM-ECF system appearing on the bottom of the page.  Where paragraph numbers or other internal references in a cited document allow for a more specific citation, those are included as well.

After receiving notice of the *qui tam* lawsuit, Affinity notified its primary insurer, Homeland. Doc. 32-1 at p. 64 ¶ 31. Citing various policy exclusions, Homeland denied coverage for the suit. *Id.* at 145–46. Affinity's effort to obtain coverage from its umbrella carrier, StarStone, was also unsuccessful. *See id.* at 160, 168–70.

In response to these denials, Affinity and Mr. Trefzger filed this suit against Homeland and StarStone. Doc. 11. The plaintiffs seek a declaratory judgment that their insurance policies obligate Homeland and StarStone to indemnify and defend against the Gugenheim suit and to reimburse plaintiffs for defense costs already incurred. Doc. 32 at 22–23. The plaintiffs also seek damages for breach of contract. Doc. 11 at ¶¶ 163–65.

The parties agree that there are no disputed facts and that the case is appropriate for resolution based on consideration of the Gugenheim complaint and the policy. Each side has filed a dispositive motion.[2] This Order addresses coverage under the Homeland policy; coverage under the StarStone policy will be resolved by separate order.

### c. Material Terms in Affinity's Policy with Homeland

The Homeland policy covers "any **Loss** that the Insured is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act**." Doc. 22-1 at 11 § I(A) (emphasis in original indicating terms that are defined in the policy). The

---

[2] The plaintiffs have moved for summary judgment. Doc. 32. Defendant Homeland has moved for judgment on the pleadings, Doc. 31, which would appropriately allow for consideration of the undisputed copies of the Gugenheim complaint and the insurance policy, which form the basis of Affinity's complaint. *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006) (considering an article attached to defendant's 12(b)(6) motion because it was "clearly integral to, and was relied upon" in plaintiff's complaint and plaintiff did not dispute its authenticity).

duty to defend extends to any claim that is covered by, *inter alia*, the indemnity provision. *Id.* at 12.³

The Homeland policy contains a number of exclusions from coverage. *See generally*, Doc. 22-1 at p. 21 § III. Two of those exclusions are relevant here:

> [T]his Policy does not apply to, and the underwriter will not pay **Loss** or **Defenses Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> (4) Dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; . . . or the gaining of any profit, remuneration or advantage by an **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud . . . [or]
>
> * * *
>
> (16) **Claim** made by or on behalf of any federal, state or local governmental or regulatory agency or entity, including but not limited to any **Claim** alleging health care fraud . . . .

*Id.* at 25–27 § III (D) (emphasis in original). In its denial letter, Homeland cited Exclusions 4 and 16, among others, as the basis for its conclusion that the Gugenheim suit was "excluded in its entirety" from coverage by the policy. Doc. 32-1 at 145–46.

---

³ The parties also briefed the question of whether the Gugenheim suit is a covered "Claim for a Professional Services Wrongful Act." *See* Doc. 35 at 6–18; Doc. 31 at 6–13. The Court need not, and does not, rule on that question, because the policy exclusions would bar coverage for the Gugenheim suit even if it qualified as a "Claim for a Professional Services Wrongful Act." *See infra* Section II. While far from a settled question, the Court assumes without deciding that the Gugenheim suit would fall within the coverage provisions of Affinity's policy with Homeland, absent these exclusions.

4

## II. Law and Analysis[4]

The parties agree that they entered into the insurance contract in North Carolina, and that North Carolina law governs this diversity suit. Doc. 31 at 5; Doc. 36 at 6 n.1; *see also Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (North Carolina law "mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract."). In North Carolina, an insurance policy is a contract, and its terms are interpreted in fundamentally the same manner as contract terms: the goal is to arrive at the intent of the parties when the policy was issued. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).

"As the language of the policy is the clearest indicator of the parties' intentions, where the policy is unambiguous, it must be presumed the parties intended what the language used clearly expresses, and the policy must be construed to mean what on its face it purports to mean." *Integon Nat'l Ins. Co. v. Phillips*, 212 N.C. App. 623, 626, 712 S.E.2d 381, 383 (2011). If there is an ambiguity,[5] the ambiguous terms should be construed in favor of coverage for the insured, because the insurance company drafts the policy. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172

---

[4] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[5] A policy term is ambiguous when it is "fairly and reasonably susceptible to more than one interpretation." *Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09cv765, 2012 WL 3308371, at *2 (M.D.N.C. Aug. 13, 2012).

S.E.2d 518, 522 (1970). Construction and application of an insurance policy provision is generally a question of law appropriate for summary disposition. *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 749 (M.D.N.C. 2002); *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng'g Co.*, 326 N.C. 133, 141, 388 S.E.2d 557, 562 (1990).

The party seeking coverage must show that the terms of the policy cover a particular event; conversely, it is the insurer who carries the burden of demonstrating that an exclusion applies. *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 790, 403 S.E.2d 571, 572 (1991). "When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962).

North Carolina courts apply these interpretive principles through the "comparison test," which requires reading "the policies and the complaint side-by-side to determine whether the events as alleged are covered or excluded." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010). Here, Homeland relies on two policy exclusions that match up exactly with the events alleged in the Gugenheim complaint.

Policy Exclusion 4 expressly precludes indemnity and defense coverage for "any claim . . . in any way involving any actual or alleged . . . [d]ishonest [or] fraudulent . . . act, error or omission by an **Insured**." Doc. 22-1 at 26 (emphasis in original). The Gugenheim complaint consistently and repeatedly uses the words "false" and

6

"fraudulent" to describe the actions of Affinity and other defendants. *See, e.g.*, Doc. 32-1 at p. 7 ¶ 2, p. 39 ¶ 126, p. 43 ¶ 147, p. 44 ¶ 152, p. 46 ¶ 162. It asserts only two claims for relief—violations of the federal False Claims Act and its North Carolina counterpart, *id.* at 7 ¶ 2—and dishonesty is an essential element of both claims. *See United States v. Raza*, 876 F.3d 604, 619–20 (4th Cir. 2017) ("The FCA penalizes anyone who knowingly presents . . . a false or fraudulent claim for payment or approval to the federal government."); N.C. Gen. Stat. § 1-607(a)(1)–(2) (requiring that the defendant "knowingly" present, use, or make a "false or fraudulent claim . . . or statement . . . ."). It does not assert a negligence claim of any sort, nor can it be read to contend that Affinity acted inadvertently or carelessly. As such, the Gugenheim suit falls within Policy Exclusion 4 as a claim "involving" an "alleged . . . dishonest or fraudulent . . . act" by Affinity. *See MSO Washington, Inc. v. RSUI Grp., Inc.*, No. C12-6090 RJB, 2013 WL 1914482, at * 3, 9 (W.D. Wash. May 8, 2013) (applying an exclusion for claims "based upon or arising out of . . . [d]ishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of the Insured" to exclude coverage for a False Claims Act suit.).

The next part of Policy Exclusion 4 also excludes the alleged fraud, which bars coverage for claims alleging "the gaining of any profit, remuneration or advantage by an **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud." Doc. 22-1 at 26 (emphasis in original). The Gugenheim complaint specifically alleges that Affinity and its co-defendants submitted bills to the government for services which were never

7

rendered. *See, e.g.*, Doc. 32-1 at p. 7 ¶ 4, pp. 34–35 ¶ 107, p. 35 ¶ 112, pp. 44–45 ¶¶ 149, 152, p. 45 ¶ 155. If true, this would constitute "profit or remuneration" to which Affinity "was not legally entitled," and Affinity has not contended otherwise. *See Int'l Ass'n of Chiefs of Police, Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 115, 116–17 (D. Md. 1988) (construing an exclusion for "claims relating to any unlawful profit or advantage" to bar indemnity for a settlement of fraud claims arising from the insured's alleged overbilling of employee work time on a federal contract.).

Policy Exclusion 16, which bars coverage for claims "made by or on behalf of" federal and state governments "including but not limited to any **Claim** alleging health care fraud and abuse," is also directly on point. Doc. 22-1 at 27 (emphasis in original). The Gugenheim complaint was filed on behalf of the federal government and the state of North Carolina,[6] and the terms "health care fraud and abuse," while not specifically defined in the policy, obviously include a fraudulent scheme to submit claims and obtain payments for health-related services which were never provided. *See, e.g.*, *United States v. Perry*, 659 F. App'x. 146, 148–53 (4th Cir. 2016) (finding that a scheme to submit claims and obtain Medicaid

---

[6] *See* 31 U.S.C. § 3730(b) ("A person may bring a civil action for a violation of [the False Claims Act] for the person and for the United States Government. The action shall be brought in the name of the Government."); N.C. Gen. Stat. § 1-608(b) ("A person may bring a civil action for a violation of [the North Carolina False Claims Act] for the person and for the State as follows: (1) The action shall be brought in the name of the State . . . .").

reimbursements for services that were not actually rendered amounted to health care fraud under 18 U.S.C. § 1347). Affinity does not contend otherwise.[7]

Affinity maintains that exclusions are to be narrowly construed in favor of coverage, *see, e.g.*, Doc. 35 at 5, but this principle only applies where policy terms are ambiguous. *Liberty Corp. Capital, Ltd.*, 2012 WL 3308371 at *2 (i.e., noting that ambiguous terms "should be construed strictly in favor of coverage"). Where, as here, "the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted." *Weyerhaeuser Co.*, 257 N.C. at 719, 127 S.E.2d at 541. There is no ambiguity to wring out of these policy exclusions: each exempts the Gugenheim claim from coverage.

Affinity also contends that Homeland was obligated to investigate the veracity of the claims in the Gugenheim suit before denying coverage, rather than simply reviewing the complaint. *See Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691–92, 340 S.E.2d 374, 378–79 (1986) (noting that the insurer has a "duty to investigate and evaluate facts expressed or implied" in the complaint "as well as facts learned from the insured and from other sources."); Doc. 35 at 19 ("Had a Homeland claim handler picked up the telephone and called Affinity . . . it would have readily ascertained that the allegations" are "entirely without merit."). But the policy is clear that the truth of the allegations is immaterial; it explicitly states that both Exclusions 4 and 16 bar coverage

---

[7] Even if the fraud alleged in the Gugenheim complaint were not "health care fraud and abuse," coverage would still be excluded. Exclusion 16 bars coverage for claims made on behalf of the government, with health care fraud claims merely being an example, not a requirement.

for claims involving a mere *allegation* of dishonesty or health care fraud. Doc. 22-1 at 25–27. Because "the facts are not even arguably covered by the policy," the insurer had no duty to investigate the third-party claim. *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 692, 340 S.E.2d at 378.

## III. Conclusion

The Gugenheim suit is unambiguously excluded from coverage under two separate prongs of Policy Exclusion 4 and under Exclusion 16. Because "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief," Homeland is entitled to judgment on the pleadings. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

For the foregoing reasons, it is **ORDERED** that Homeland's motion for judgment on the pleadings, Doc. 30, is **GRANTED**, and to the extent Affinity's motion for partial summary judgment, Doc. 29, is directed against Homeland, it is **DENIED**

This the 25th day of September, 2018.

_____
UNITED STATES DISTRICT JUDGE