IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| AFFINITY LIVING GROUP, LLC, | ) | |
|---|---|---|
| and CHARLES E. TREFZGER, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:18-CV-35 |
| | ) | |
| STARSTONE SPECIALTY | ) | |
| INSURANCE COMPANY, and | ) | |
| HOMELAND INSURANCE | ) | |
| COMPANY OF NEW YORK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs here, Affinity Living Group and Charles Trefzger, are defendants in a *qui tam* lawsuit pending in the United States District Court for the Eastern District of North Carolina. They filed this case seeking to compel Affinity's insurer, defendant StarStone Specialty Insurance Company, to defend and indemnify them in the *qui tam* suit. Because the *qui tam* claims did not arise out of the rendering or failure to render medical professional services, they are not covered by Affinity's policy with StarStone, and the Court will grant StarStone's motion for judgment on the pleadings.

I. **Background**

In 2016, Stephen Gugenheim filed a *qui tam* suit in the Eastern District of North Carolina against a number of North Carolina adult care homes, including Mr. Trefzger, whom he identified as the owner of all the homes, and Affinity, which he identified as the

managing entity.[1]  Doc. 32-1 at p. 8 ¶ 6.  He filed the complaint on behalf of the United States and the State of North Carolina, *id.* at p. 6 ¶ 1, alleging that the defendants acted in concert to submit false claims for Medicaid reimbursements for services that were not actually provided to residents of their adult care homes.  *Id.* at p. 7 ¶¶ 2, 4.  Mr. Gugenheim further alleged that the facilities were understaffed, that they were unable to provide "personal care services"[2] which met the assessed needs of residents, and that staffing levels fell below requirements for obtaining Medicaid reimbursements.  *Id.* at pp. 34–35 ¶¶ 107–09, p. 37 ¶ 120.  Finally, he alleged that the defendants falsely certified compliance to obtain Medicaid reimbursements, in violation of the False Claims Act, 31 U.S.C. § 3729, and a similar North Carolina statute, N.C. Gen. Stat. § 1-605.  *Id.* at pp. 6–7 ¶¶ 1–2, p. 47 ¶¶ 165–66, p. 48 ¶¶ 170–71.  The suit seeks treble damages and penalties for each false statement.  *Id.* at p. 8 ¶ 11.

Affinity carries separate insurance policies through Homeland Insurance and StarStone, each of which provides indemnification and defense against certain claims arising out of services rendered at Affinity's adult care facilities.  Doc. 22-1 (Affinity's policy with Homeland); Doc. 19-1 (Affinity's policy with StarStone).  Affinity's policy with Homeland is the first line of defense, *see* Doc. 22-1 at 11, and the StarStone policy

---

[1] Nothing in this Order should be construed as expressing an opinion on the merits of the Gugenheim complaint or the veracity of its allegations.

[2] According to the complaint, "Personal Care Services provided under the N.C. Medicaid Program include a range of hands-on human assistance provided to persons of all ages with disabilities and chronic conditions to enable them to accomplish tasks that they would ordinarily do for themselves if they were not disabled."  Doc. 32-1 at p. 29–30 ¶ 86.

is an "umbrella" plan that applies only if the Homeland policy is exhausted on, or is inapplicable to, a covered claim. *See* Doc. 19-1 at 15, 25.

After Mr. Gugenheim filed suit, both Homeland and StarStone denied coverage. Doc. 32-1 at 146, 160. In its denial letter, StarStone stated that the Gugenheim complaint did not fall within the policy's coverage provisions "because the complaint does not allege **damages** resulting from a **claim** arising out of a **medical incident**." *Id.* at 160 (emphasis in original indicating terms that are defined in the policy).

Affinity and Mr. Trefzger then filed this suit against Homeland and StarStone. Doc. 11. They seek a declaratory judgment that the insurance policies obligate Homeland and StarStone to indemnify and defend against the Gugenheim suit and to reimburse them for defense costs already incurred. *Id.* at ¶¶ 158–62; Doc. 32 at 27. They also seek damages for breach of contract. Doc. 11 at ¶¶ 163–65.

The parties agree that there are no disputed facts and that the case is suited for resolution based on consideration of the Gugenheim complaint and the policy.[3] "Construction and application of insurance policy provisions is a question of law appropriate for summary disposition." *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 749 (M.D.N.C. 2002); *accord C.D. Spangler Const. Co. v. Industrial Crankshaft & Eng'g Co.*, 326 N.C. 133, 141, 388 S.E.2d 557, 562 (1990). The parties agree that they

---

[3] The plaintiffs have moved for summary judgment. Doc. 32. The defendant StarStone has moved for judgment on the pleadings, Doc. 27, which appropriately allows for consideration of the undisputed copies of the Gugenheim complaint and the insurance policy. *See Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006) (considering an article attached to defendant's 12(b)(6) motion because it was "clearly integral to, and was relied upon" in plaintiff's complaint and plaintiff did not dispute its authenticity).

entered into the insurance contract in North Carolina and that North Carolina law governs in this diversity suit. Doc. 28 at 6; Doc. 36 at 6 n.1; *see also Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (North Carolina law "mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").[4]

By separate Order, the Court has held that the Homeland policy excludes coverage for the claims made and defense costs associated with the Gugenheim lawsuit. *See* Doc. 46. This Order addresses whether Affinity has coverage under its policy with StarStone.

## II. Discussion and Analysis

Affinity has coverage for the *qui tam* lawsuit under the StarStone policy if two conditions are met: (1) the primary insurance policy underlying the StarStone policy (here, the Homeland policy) does not apply to, or was exhausted on, a claim against the insured; and (2) the claim against the insured and the damages sought otherwise fall within the coverage provisions of the StarStone policy. Doc. 19-1 at 25 (§ IV(F)(1)–(2)). Because Homeland, the primary carrier, denied coverage for the Gugenheim suit and the Court has agreed that the Homeland policy excludes coverage, the first condition has been satisfied. In evaluating whether there is coverage under the second condition, the Court will read the policy and the Gugenheim complaint "side-by-side to determine whether the events as alleged are covered or excluded." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010).

---

[4] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

As noted above, the Gugenheim complaint is a *qui tam* action filed on behalf of the United States and the state of North Carolina alleging violations of the federal False Claims Act and the North Carolina False Claims Act.  Doc. 32-1 at p. 6 ¶ 1.  To state a claim under the federal False Claims Act, the plaintiff must prove:

> (1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due.

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003); *see also* N.C. Gen. Stat. § 1-607(a)(1)–(2) (providing liability for damages sustained by the state when a defendant "knowingly" presents, uses, or makes a "false or fraudulent claim . . . or statement . . . .").  Consistent with these requirements, Mr. Gugenheim alleges that the adult care homes owned and managed by Affinity and Mr. Trefzger acted in concert to submit false claims for Medicaid reimbursements for personal care services that were not actually rendered or otherwise fell below various quality controls for obtaining Medicaid reimbursements.  Doc. 32-1 at pp. 7–8 ¶¶ 2, 4–6.

The coverage provision in the StarStone policy provides:  "We [StarStone] will pay on behalf of the **insured** [losses above the applicable limit] which the **insured** becomes legally obligated to pay as **damages** resulting from a **claim** arising out of **a medical incident**."  Doc. 19-1 at 15 (§ I(A)).[5]  The policy defines "medical incident" as

---

[5] The policy emphasized words or phrases defined within the policy by using boldface type.  The first time the Court quotes policy language, it too will indicate defined words and phrases in bold, exactly as written in the policy.  Thereafter, the Court will use regular typeface.

"an alleged or actual act, error or omission in the **insured's** rendering or failure to render **medical professional services**." Doc. 19-1 at 33 (§ V(J)). "Medical professional services" is defined by the policy as "the health care services or the treatment of a **patient** including," *inter alia*, medical, dental, and counseling services.[6]

The plain language of the policy is clear that billing for medical professional services is not itself a medical professional service. Billing is not a "health care service" or "the treatment of a patient" and is not included among the examples of the covered services listed in the policy. *See supra* note 6. No item on this list of examples has anything to do with billing, payment, insurance, Medicaid reimbursement, or any financial or business aspect of patient care; instead, each listed activity entails some aspect of looking after a patient. The only listed service not directly involved in patient care is "committee activities for accreditation, quality assurance, peer review, and standards review," Doc. 19-1 at 33 (§ V(K)), which is also unrelated to billing. *Id.* Billing is different in kind from all of these activities.

This plain reading of the policy language is supported by case law. A number of courts have held that alleged false billings for health care services do not qualify as "medical incidents" or "medical professional services" under other professional liability

---

[6] The full definition for "Medical Professional Services" is "the health care services or the treatment of a **patient** including medical, surgical, dental, nursing, psychiatric, osteopathic, chiropractic or other health care professional services; furnishing or dispensing of prescription drugs, blood, blood products, medical, surgical or dental supplies; furnishing of food or beverage in connection with such treatment; and the providing of counseling or social services in connection with such treatment or care. **Medical professional services** includes the insured's committee activities for accreditation, quality assurance, peer review, and standards review." Doc. 19-1 at 33 (§ V(K)).

6

policies. *See, e.g.*, *Horizon West Inc. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Supp. 2d 1074, 1079 (E.D. Cal. 2002), *aff'd*, 45 F. App'x 752 (9th Cir. 2002) (holding that "billing for services rendered is not a professional service"); *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694–95 (7th Cir. 2009) (distinguishing false billing from a medical incident arising out of professional services); *Hampton Med. Grp., P.A. v. Princeton Ins. Co.*, 840 A.2d 915, 925 (N.J. Super. Ct. App. Div. 2004) (noting that "billing practices . . . do not constitute professional services"). Billing for medical services does not fall within the policy definition of "medical professional services," and thus does not qualify as a covered "medical incident."

That does not end the inquiry, as the Gugenheim complaint elsewhere does allege a "medical incident" within the meaning of the policy. It is undisputed that the personal care services discussed in the complaint are "medical professional services," and the Gugenheim complaint alleges that Affinity failed to render or otherwise provided deficient personal care services to the residents of its adult care homes. Doc. 32-1 at p. 7 ¶ 4, pp. 30–35 ¶¶ 87–109. The question is therefore whether the Gugenheim claim "arises out of" these alleged or actual acts, errors, or omissions in Affinity's rendering or failure to render personal care services. *See* Doc. 19-1 at 15 (§ I(A)), 33 (§ V(J)) (providing coverage for claims arising out of a "medical incident," defined as "an alleged or actual act, error or omission in the insured's rendering or failure to render medical professional services.").

The policy itself does not define the phrase "arising out of," but North Carolina law is clear that the term carries "much broader significance" than the phrase "caused

7

by." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 539, 350 S.E.2d 66, 69 (1986). The words "'arising out of' . . . are ordinarily understood to mean 'incident to,' or 'having connection with.'" *Id.* While this is a broad and comprehensive phrase, its use does not equate to "a general liability insurance contract." *Fidelity & Cas. Co. of N.Y. v. N.C. Farm Bureau Mut. Ins. Co.*, 16 N.C. App. 194, 198–99, 192 S.E.2d 113, 118 (1972). There must be a "causal connection" between the conduct defined in the policy and the occurrence for which coverage is sought. *Scales v. State Farm Mut. Auto. Ins. Co.*, 119 N.C. App. 787, 790, 460 S.E.2d 201, 203 (1995). Coverage does not obtain where the occurrence is "the result of some independent act disassociated from" the conduct defined in the policy. *See State Capital*, 318 N.C. at 540, 350 S.E.2d at 70.

Here, the policy covers claims "arising out of" Affinity's "rendering or failure to render" personal care services. The Gugenheim claim, however, seeks damages for injuries to the government arising out of Affinity's alleged false billing, not for injuries to residents arising out of deficiencies in personal care services. *See* Doc. 32-1 at pp. 7–8 ¶¶ 2–6, 11; 31 U.S.C. § 3729(a) (providing recovery for "damages which the Government sustains because of the act of" the defendant); *United States ex rel. Woodard v. Country View Care Ctr., Inc.*, 797 F.2d 888, 893 (10th Cir. 1986) (noting that the United States' injury under the False Claims Act is "the difference between what the government actually paid and the amount it would have paid in the absence of the fraudulent claim.").

False or fraudulent billing is "disassociated from" Affinity's rendering or failure to render personal care services. *See State Capital*, 318 N.C. at 540, 350 S.E.2d at 70; *see also* Doc. 32-1 at p. 7 ¶ 2 (alleging that the defendants knew of or recklessly disregarded

8

the falsity of their Medicaid claims). It is an "intervening cause" that severs any connection between the medical incident alleged in the complaint and the injuries to the government that the False Claims Act suit seeks to recover for. *Cf. State Capital*, 318 N.C. at 539–40, 350 S.E.2d at 69–70 (holding that gunshot injuries "arose out of" the use of an automobile where they were caused by the accidental discharge of a firearm being unloaded from the automobile and distinguishing injuries caused by the *reckless* or *intentional* discharge of a firearm inside an automobile because the reckless and intentional conduct was an "independent . . . disassociated" act that severed the causal connection between use of the truck and the victim's injuries). Thus, the Gugenheim claims do not "arise out of" the rendering or failure to render medical professional services and the policy does not provide coverage to Affinity.

The Court appreciates that there is no case directly on point and that the North Carolina courts have broadly interpreted the phrase "arising out of" when it appears in coverage provisions. *See State Capital*, 318 N.C. at 538, 350 S.E.2d at 69; *Pulte Home Corp. v. Am. S. Ins. Co.*, 185 N.C. App. 162, 167, 647 S.E.2d 614, 618 (2007); *City of Greenville v. Haywood*, 130 N.C. App. 271, 276, 502 S.E.2d 430, 433 (1998). But those cases do not hold that "arising out of" should be read in such a way as to sever the phrase from its surrounding language. Affinity's policy only covers claims that arise out of "an alleged or actual act, error or omission in the insured's rendering or failure to render medical professional services," Doc. 19-1 at 33 (§ V(J)), not claims that arise out of anything associated with running a nursing home. *Cf. Fidelity & Cas. Co.*, 16 N.C. App.

at 198, 192 S.E.2d at 118 (in using the words "arising out of" the parties did not "contemplate a general liability insurance contract.").

A comparison of two North Carolina cases, each applying the "arising out of" policy language at issue here, supports this reading. The two cases address insurance coverage for claims against law enforcement officers accused of sexual assault while on duty.

In *City of Greenville v. Haywood*, the City's insurance policy covered damages owed "because of WRONGFUL ACT(S) . . . arising out of the performance of the INSURED'S duties to provide law enforcement . . . ." 130 N.C. App. at 274, 502 S.E.2d at 432 (emphasis omitted). The court found coverage for a claim against a city police officer alleging that the officer had sexually assaulted the plaintiff after investigating a break-in at her apartment. *Id.* at 273, 502 S.E.2d at 432. Applying *State Capital*, the court noted that "the phrase 'arising out of' . . . only requires a causal nexus between" the insured conduct, i.e. "law enforcement duties," and the sexual assault injuries for which coverage was sought. *Id.* at 277, 502 S.E.2d at 434. The court found that a sufficient causal nexus did exist, as "'but for' [the insured's] position as a . . . police officer, [he] would not have had an opportunity to enter [the victim's] home, conduct a partial investigation of the reported break-in, and later sexually assault her." *Id.*

In a later case involving coverage for a sexual assault committed by a law enforcement officer, the Supreme Court adopted a dissenting opinion from the Court of Appeals that distinguished *Haywood* based on a difference in policy language. *See Young v. Great Am. Ins. Co. of N.Y.*, 359 N.C. 58, 58, 602 S.E.2d 673, 674 (2004).

Similar to the *Haywood* policy, the policy in *Young* covered all damages owed "because of 'wrongful act(s)' . . . arising out of the performance of the Insured's duties to provide law enforcement activities." 162 N.C. App. 87, 89, 590 S.E.2d 4, 6, *rev'd*, 359 N.C. 58, 602 S.E.2d 673 (2004). Unlike in *Haywood*, however, the policy limited "wrongful acts" to acts committed "by an Insured *while performing* law enforcement duties." *Id.* (emphasis added). A majority of the Court of Appeals found coverage, finding *Haywood* indistinguishable. *Id.* at 90–91, 590 S.E.2d at 6–7.

In the opinion later adopted by the Supreme Court, the dissent noted that the provision limiting "wrongful acts" to those committed "while performing law enforcement duties" could not be ignored. *Id.* at 92, 590 S.E.2d at 8 (Hunter, J., dissenting). The dissent maintained that "the terms should be construed together" and held that "the intent of the policy is clear and unambiguous: it is designed to cover those wrongful acts of police officers committed as the officer is carrying out duties related to law enforcement." *Id.* at 92, 590 S.E.2d at 8. Because a "sexual assault is not a law enforcement duty," the officer did not commit a wrongful act "while performing law enforcement duties," and the policy did not provide coverage. *Id.* The Supreme Court of North Carolina agreed, reversing the Court of Appeals majority "[f]or the reasons stated in the dissenting opinion." *Young*, 359 N.C. at 58, 602 S.E.2d at 674.

Read together, *Young* and *Haywood* make clear that the specific language in each policy must be read as a whole to ascertain the parties' intentions.[7] *See also State Capital*, 318 N.C. at 541, 350 S.E.2d at 70 ("[E]ach policy is a separate contract of insurance between the company issuing it and the insured, and requires a separate and independent analysis in light of that relationship."); *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978) (noting that the goal of interpreting insurance contracts is to arrive at the intent of the parties when the policy was issued). Here, coverage exists only for a "claim arising out of . . . an alleged or actual act, error or omission in the insured's rendering or failure to render medical professional services." Doc. 19-1 at 15 (§ I(A)), 33 (§ V(J)). While the personal care services discussed in the complaint are medical professional services, the "independent act" of false or fraudulent

---

[7] Indeed, because North Carolina Courts are clear that the phrase "arising out of" is much broader than the phrase "caused by," most of the cases cited by StarStone are not helpful. While these cases involve closely analogous facts, each denying professional liability insurance coverage for False Claims Act suits alleging false billing, they interpret insurance policies requiring that the claim or injury be "caused by" the medical incident or medical services, or otherwise involve different policy terms. *See, e.g.*, *Horizon West Inc.*, 214 F. Supp. 2d at 1076 (construing a policy covering damages "resulting from . . . [*inter alia*], the providing or failure to provide professional services" to exclude coverage for a False Claims Act suit alleging fraudulent Medicaid billing); *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 919 n.3–5, 925–26 (10th Cir. 2008) (construing three policies, two of which covered injuries "caused by a 'medical incident,'" and a third which covered damages "because of a 'professional incident,'" to deny coverage for a False Claims Act suit alleging fraudulent Medicaid billing); *Momence Meadows Nursing Ctr.*, 566 F.3d at 694–95 (construing a policy where covered injuries had to be "caused by a 'medical incident'" to deny coverage for a False Claims Act suit alleging fraudulent Medicaid billing); *United States ex rel. Cal. Advocates for Nursing Home Reform v. Am. Intern. Spec. Lines Ins. Co.*, No. C 06-03069 JSW, 2007 WL 4208352, at *2 (N.D. Cal. Nov. 27, 2007) (construing a policy covering injuries "caused by a medical incident" to deny coverage for a False Claims Act suit alleging false billing); *see also MSO Washington, Inc. v. RSUI Grp., Inc.*, No. C12–6090 RJB, 2013 WL 1914482, at *8–9 (W.D. Wash. May 8, 2013) (denying coverage for a False Claims Act suit because the policy only covered negligence in the rendering of professional services, while False Claims Act liability requires a knowing misrepresentation; Affinity's policy does not contain a similar negligence limitation).

billing is "disassociated from" the rendering or failure to render those services. *See State Capital*, 318 at 540, 350 S.E.2d at 70.

### III. Conclusion

The Gugenheim claim seeks to recover for the government's injuries arising out of Affinity's allegedly false billing, not injuries to the patients arising out of personal care services. The claim does not "arise out of a medical incident," and StarStone is not obligated to defend or indemnify the plaintiffs here in the *qui tam* suit.

Because the Court holds that the Gugenheim claim does not arise out of a medical incident, it need not reach StarStone's other arguments against coverage.

It is **ORDERED** that:

1. StarStone's motion for judgment on the pleadings, Doc. 27, is **GRANTED**.

2. Affinity's motion for partial summary judgment, Doc. 29, is **DENIED**.

This the 5th day of October, 2018.

UNITED STATES DISTRICT JUDGE